(9 Misc. Rep. 349.)

### GOTTSBERGER v. MAYOR, ETC., OF CITY OF NEW YORK.

(Superior Court of New York City, General Term. July 2, 1894.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE DOCKS IN NEW YORK CITY.

An action cannot be maintained against the city of New York for injuries caused by the defective condition of a dock structure, as the department of docks has exclusive control of such matters.

2. SAME—OBSTRUCTING STREETS—PROOF OF NEGLIGENCE.

No recovery can be had against a city for injuries caused by falling over a stringpiece, 12 inches high, placed on the side of a street to protect a water pipe, and to prevent teams going up and down a pier at that point from colliding with each other, unless such stringpiece is shown to be a dangerous obstruction to public travel, since every obstruction in a street is not actionable.

Appeal from jury term.

Action by Francis Gottsberger against the mayor, aldermen, and commonalty of the city of New York. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before FREEDMAN and McADAM, JJ.

W. H. Clark, for appellant.

C. A. Flanner, for respondent.

FREEDMAN, J. At the trial the plaintiff testified that on the evening of October 14, 1890, he walked down Warren street, with the intention of taking the Erie ferry, at the foot of Chambers street, to catch the 7 o'clock train for Sterlington; that upon arriving at the southeast corner of West and Warren streets, instead of continuing on the east side of West street till he would have reached the cross walk in front of the ferry house, he took a diagonal course over the cobblestone pavement towards the ferry house, at what he termed a "slow run, or a sort of dog trot;" that at said time he had an umbrella in his right hand, and a little handbag in his left hand; and that while he was proceeding, in this way, diagonally across West street, he suddenly collided with a stringpiece on the westerly side of West street, fell over it, and was injured. The action was brought to recover damages for the injury sustained under these circumstances. The plaintiff also admitted that there was no obstruction in West street which prevented him from crossing to the Chambers street ferry by the ordinary cross walks; that the street was entirely deserted at the time, except that there were a few horse cars upon it; and that he was in a hurry because he was apprehensive that he might be late. The alleged stringpiece had, according to all the evidence, been used for about eight years as a protection to a water pipe that runs into the buildings on the dock, and also to prevent the teams going up and down the pier from interfering and colliding with one another. It therefore had, for quite a number of years, served a highly useful purpose.

There was some conflict, however, as to whether the precise spot at which the plaintiff claimed to have fallen over the stringpiece was or was not within the limits of West street proper, as laid out by law. If it was west of the westerly line of West street, it was

upon ground which may well be deemed to be a part of a dock structure, and over which the department of docks had exclusive control, under the statutes which define and regulate the jurisdiction, powers, and duties of said department. In that aspect, the plaintiff has no cause of action against the corporation of the city of New York. Bigler v. Mayor, etc., 5 Abb. N. C. 51; McKay v. City of Buffalo, 9 Hun, 401, affirmed 74 N. Y. 619; Maxmilian v. Mayor, etc., 62 N. Y. 160; Tone v. Mayor, etc., 70 N. Y. 157; Ham v. Mayor, etc., Id. 459; New York & Brooklyn Sawmill, etc., Co. v. City of Brooklyn, 71 N. Y. 580; Smith v. Rochester, 76 N. Y. 506.

But suppose the stringpiece did encroach upon the limits of West street, considered as a public highway. If it did, it was to an inconsiderable extent. It was not a nuisance per se, and the liability of the city must rest upon negligence. The plaintiff so treated it in his complaint, which is based upon negligence. There was nothing out of repair, and consequently, if the city is liable at all, it is liable for permitting something to exist which constituted a dangerous obstruction of the public highway. Not every obstruction is actionable. If that were so, no water hydrants, trees, hitching posts, telegraph poles, awning posts, stepping-stones,—not even the stoops of the houses projecting beyond the house lines,—could be permitted to remain. This subject has been so fully discussed in the recent case of Platt v. Mayor, etc., 28 N. Y. Supp. 672, that a bare reference to that case is all that is necessary here. The plaintiff was therefore bound to prove that, to the extent that the stringpiece encroached upon the westerly line of West street, it constituted a dangerous obstruction to public travel. The plaintiff failed to sustain the burden of proof in this respect. The mere fact that he himself was injured, while proceeding in a hurry, cannot be held sufficient, in the face of the fact—established beyond controversy— that the so-called stringpiece had fulfilled a highly useful purpose for many years, and that such purpose was a public one. So far from being bound to apprehend danger from the mere existence of the stringpiece, which was from 12 to 15 inches high, the city may be deemed to have been justified in assuming that the stringpiece was sufficiently conspicuous and safe for all ordinary purposes.

Upon the whole case, I am satisfied that, even if the plaintiff did not contribute by negligence on his part, the occurrence was an accident for which the city should not be held liable. The judgment and order should be reversed, and a new trial ordered, with costs to appellant, to abide the event.