## A. C. KNOTHE *vs.* GEORGE ZINZER ET ALS.

First Judicial District, Hartford, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The owner of land abutting on a highway possesses therein special and peculiar rights, in addition to those possessed by him in common with the public in general, and for the infringement of such rights he may maintain a private action.

The defendants, unlawfully and without color of right, plowed up and seeded to grass a public highway upon which abutted land owned by the plaintiff. *Held* that the defendants were guilty of trespass upon land over which the plaintiff had the absolute control, so far as consistent with the right of a public highway, and hence that the plaintiff's complaint, in which he asked for a mandatory injunction and for damages, was not demurrable.

Argued October 4th—decided November 30th, 1921.

ACTION for a mandatory injunction and for damages caused by interference with and trespass upon a highway, brought to and tried by the Superior Court in Middlesex County, *Hinman, J.,* upon a demurrer to the complaint; the court sustained the demurrer and rendered judgment for the defendants, from which the plaintiff appealed. *Error, judgment set aside and cause remanded.*

*Edmund Zacher,* for the appellant (plaintiff).

*Gustaf B. Carlson,* for the appellees (defendants).

GAGER, J. From the complaint it appears that on or about July 1st, 1883, Charles R. and Richard H. Stannard were the owners of certain land bordering Long Island Sound in the town of Westbrook, and known as Stannard Beach. For the purpose of developing this land, the Stannards caused a map to be made in which the land was divided into lots

bounded upon avenues laid out and named upon the map. The avenue nearest to and fronting the sea, and being the avenue with which this action is concerned, was called and known as First or Front Avenue and also as East Broadway. This map was used in the sale of lots and shown to purchasers. On October 31st, 1902, the plaintiff bought a tract of land eighty feet wide from east to west and one hundred feet deep from north to south, with the privilege of all streets open and to be opened, for the full enjoyment of said premises, and the privilege of passing to and from the sea. The land then bought consisted of two lots, and fronts on said First or Front Avenue or East Broadway. The plaintiff at various times between October 31st, 1902, and June 27th, 1907, bought other tracts as laid out on the map, and all of the deeds to the plaintiff contained in substance the following provision: "With the privilege of all streets and avenues, for the full enjoyment of said premises, and of passing to and from the public highway and to and from the sea." Ever since the conveyance to the plaintiff, all of the highways described on the map have been accepted and used by the public and have become public highways. At the time of the acts complained of the plaintiff was the owner of two lots on the north side of said First Avenue and owned all the land, which was the beach, on the south side of said avenue.

On September 16th, 1913, certain of the owners of lots fronting on East Broadway or First or Front Avenue, so-called, caused to be incorporated the Stannard Beach Improvement Association, the purpose of which is described "to purchase, hold and improve real estate, to buy or improve all classes of property consistent with and for the uses and purposes of the association, and for such other purposes as may be consistent with the general improvement of the

section known as Stannard Beach, Westbrook." On or about September 20th, 1918, the Stannard Beach Improvement Association voted to cause the highway known as First Avenue or Front Avenue or East Broadway, to be plowed up and seeded down in order to have grass plots instead of said highway in front of the lots facing said highway, and pursuant to said vote, on or about September 20th, 1918, the defendants did plow up and seed down said avenue, and ever since have maintained grass lawns in front of said lots in the place of said highway, all of which was done without the consent of and against the will of the plaintiff. The complaint further alleges that by the acts of the defendants in plowing up and seeding down said avenue, the plaintiff has been deprived of his rights under his conveyances, and has been deprived of the use and enjoyment of the highway known as Front Avenue or First Avenue or East Broadway, and has been deprived of his access to and from the sea upon said highway, and his real estate so acquired by him has been depreciated in value because of the acts of the defendants. The plaintiff claimed a mandatory injunction compelling the restoration of the highway, and damages.

To this complaint the defendants demurred for the following reason: "The plaintiff has not alleged the infringement by the defendants of any rights that he has in any of the public highways specified in the complaint except such rights as he has in and to such highway, in common with the public, and for the invasion or infringement of rights in said highway that the plaintiff has in common with the public no private action can be maintained; and for this reason the complaint does not set up a cause of action against said defendants or either of them." This demurrer was sustained by the court; judgment was thereupon

rendered for the defendants, and from this judgment the plaintiff appeals.

The defendants by their demurrer admit that the highways, including said First Avenue or Front Avenue or East Broadway, have been accepted and used by the public and so have become public highways, and that they were such prior to and while the acts complained of were being done. The demurrer, in the most general way, raises the question as to whether an owner of land bordering on a highway has any such interest in the highway in front of his property that he can maintain an action for interference with such highway by private persons. The defendant Stannard Beach Improvement Association, pursuant to the vote of which and by direction of which the highway in question was plowed up and seeded down, was apparently a voluntary private corporation having no municipal powers connected with or in any way controlling the use of highways at Stannard Beach. It therefore had no power to, nor did it attempt in any way legally to, discontinue East Broadway, but, apparently with the idea of improving the neighborhood, of its own motion and without public authority, proceeded to plow up and seed down the avenue and maintain it as a grass lawn, and therefore, in effect, destroyed the avenue as a highway for public travel; and the defendants claim that this can be done by them without injuring the plaintiff in any such way that he can maintain an action for interference with his rights as an adjoining property owner.

The defendants contend that the plaintiff, as owner of lots fronting on this highway, which has been practically eliminated by its alteration into a grass lawn, has not sustained any private injury for which he can recover damages, and that his only rights are of the same nature as those of the public generally, for inter-

ference with which no private action is maintainable. The demurrer was sustained substantially on this ground. The trial court in its memorandum of decision said: "No act is alleged which constitutes an actionable invasion of any right or privilege in the highway not in common with the public generally, but applying to the plaintiff by reason of ownership of the abutting land"; and again: "The plaintiff's right to pass and repass differs from that of other individuals, not abutting owners, if at all, not in nature, but in degree."

The special rights of abutting owners in highways have been considered by this court in a number of cases, and with such fullness as not to require any re-examination. We think they all show that the trial court misconceived the true nature of the injuries complained of, and confused the rights of passage of mere travelers with the peculiar rights of adjoining owners. Of course, the plaintiff has rights in the use of the highways in common with the public, but it is equally clear that the plaintiff has certain rights as an abutting owner not common to the public but special to him, —property rights, for the invasion of which an action will lie. In *Peck* v. *Smith*, 1 Conn. 103, JUDGE SWIFT, after enquiring at some length into the nature of rights in highways, makes the following statement, p. 146: "The result of the enquiry is, that the public have only an easement, a right of passage in a highway; that the adjoining proprietors have the freehold, and own the soil; have a right to every use and profit which can be derived from it consistent with the easement; may take trees growing thereon, occupy mines, or sink water courses under it, and by the common law may depasture it; that when disseised, they can maintain ejectment, and recover the possession subject to the easement; can maintain trespass for any act done to the land not

necessary for the enjoyment of the easement, which would be an actionable injury if the land was not covered by a highway; that the soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement." To this somewhat extended and careful statement we may add what is said in the more recent case of *Newton* v. *New York, N. H. & H. R. Co.,* 72 Conn. 420, 426, 44 Atl. 813: "Every landowner whose land abuts on a highway is supposed to be the owner of the soil to the middle of the highway, in fee, subject to the easement of the public travel, and may do in the highway on his side of the middle line anything which the owner in fee of land may do, if he does not interfere with that easement. . . . Such an abutting landowner has, by reason of that ownership, some privileges in the highway which are not common to the public generally. 'Any occupant of land abutting on a highway may do many things in the highway by reason of said occupancy. Such an occupant would undoubtedly have the right of free ingress and egress, and for that purpose might grade the surface of the highway, if he did not thereby render the surface unfit for public travel. He might ordinarily construct a sidewalk, set hitching posts, place a stepping-stone to enable passengers to enter, or alight from a carriage more readily, or set out shade trees.'" (Citing cases.) And also: "The abutting landowner may, of course, use the easement of passing and repassing in the highway to the same extent that any individual of the community may; but the privileges just mentioned, which such owner has, are possessed by him as an abutting landowner, and are in addition to the privileges which belong to him as one member of the community." In *Park City Yacht Club* v. *Bridgeport,* 85 Conn. 366, 373,

82 Atl. 1035, the court said: "The vacation of a part of a street which leaves property abutting on the remaining part of the street with access to the system of streets in either direction has generally been held to constitute no actionable injury. But the vacation of a part of a street which destroys all access by property abutting on the remaining part of the street to the system of streets in one direction, thus putting the property on a *cul-de-sac*, has generally been held to constitute an actionable injury."

In the present case the entire street has been practically vacated by the action of the defendants, destroying access to any of the streets entering into First Avenue or East Broadway, and shutting off access by the plaintiff from his two lots to any other part of Stannard Beach. The plaintiff's land is completely disconnected with any highway. *Cullen* v. *New York, N. H. & H. R. Co.*, 66 Conn. 211, 225, 33 Atl. 910. It is too obvious to require argument, that the action of the defendants has seriously interfered with rights, as described in the cases cited, peculiar to the plaintiff's land and which the public at large have no interest whatever in, and for the injury to these rights the plaintiff clearly is entitled to maintain an action.

The allegation of damage is broad enough to cover all of these rights. The plaintiff has been deprived of the use and enjoyment of said highway. While this language is broad enough to include the use which the general traveler has as distinguished from the abutting proprietor, it is also broad enough to include and to permit proof of the right of access from the plaintiff's property, and all the results peculiar to the plaintiff's property. The plaintiff also alleges that the value of his property has been depreciated by the closing up of this highway, and that he has been deprived of his access to and from the sea upon said

highway, which is but one specific phase of access from and to his property. These rights indeed we think are recognized in the brief of the defendants, for it is said: "The owner of property that abuts a highway has certain rights in the highway in common with all others in the community; for an injury to these rights he cannot bring a private action. He has also other rights in the highway which may be spoken of collectively as the easement of access; this easement is confined to the street in front of the lot." There is certainly enough here to withstand a demurrer based upon the absence of a cause of action. It is to be remembered that no color of right on the part of the defendants anywhere appears. They had no authority or control whatever over land in front of another's man's premises, and by their action they are guilty of trespass upon land over which the plaintiff had the absolute control so far as consistent with the right of a public highway. The demurrer should have been overruled.

There is error, the judgment is set aside and the cause is remanded to be proceeded with according to law.

In this opinion the other judges concurred.